212 F.Supp. 664 (1962)
UNITED DEVELOPMENT COMPANY, a corporation, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 60 C 370.
United States District Court E. D. Missouri, E. D.
November 7, 1962.
*665 Earl Q. Smith, St. Louis, Mo., for plaintiff.
D. Jeff. Lance, U. S. Atty., John A. Newton, Asst. U. S. Atty., for defendant.
REGAN, District Judge.
This is an action instituted under Title 28 U.S.C. § 1346 by the taxpayer, United Development Company, for a refund of $22,594.63 plus interest.
The basic facts are not in dispute. Plaintiff is a Missouri corporation which owns and operates a cemetery in St. Louis County, Missouri, which, prior to July 5, 1956, consisted of approximately 64.16 acres of real property. On July 5, 1956, plaintiff sold approximately 19 acres of the land to the State Highway Commission of Missouri under threat of condemnation.
As a result of the sale, plaintiff realized a gain in the year 1956 of $146,688.14, computed as follows:

 Land sales price $183,880.00
 Expenses of sale 8,963.47
 ____________
 Net proceeds 174,916.53
 Cost of land 28,228.39
 ___________
 Gain on sale $146,688.14

In addition to the sum of $183,880.00 which was received by plaintiff as consideration for the sale, plaintiff received approximately 1.46 acres of real estate by quit claim deed. This parcel of real estate was carried at zero value for purposes of the computation of gain without objection by the government.
The land sold to the State Highway Commission had been zoned and dedicated for use as a cemetery. The land was used by plaintiff for the sale of burial privileges. There were no buildings on the property acquired by the State.
In October, 1956, the plaintiff began construction of a new administration building, on a portion of its remaining land. The building was completed in July, 1957, at a cost to plaintiff of $41,889.63. The building is used for office space for a manager and bookkeeper of the cemetery, storing of records, meeting room for the board of directors and office room for meeting with clients.
Prior to the construction of the administration building, the business affairs were carried on in an old one-room frame building acquired with a portion of the retained cemetery land. The old building was razed upon completion of the new building.
On its federal income tax return for the year 1956, plaintiff reported the gain of $146,688.14 as long term capital gain, reflecting a total tax due of $26,924.18. Subsequently, it filed an amended return claiming that the sum of $41,889.63 expended for the new administration building was a reinvestment of the gain realized from the involuntary conversion of its cemetery land sold to the State Highway Commissioner within Section 1033 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1033. The Commissioner disallowed treatment as reinvestment under Section 1033 and the tax was assessed and payment demanded in accordance with the original 1956 return. The balance due, plus assessed interest, aggregating $28,734.00 was paid by plaintiff under protest on October 14, 1959. On November 2, 1959, plaintiff filed a claim for refund alleging overpayment of taxes in the total sum of $22,594.63 ($20,784.81 plus assessed interest of $1,809.82), which claim for refund was disallowed by the Commissioner.
The relevant portions of Title 26, Section 1033, of the United States Code reads as follows:
"(a) General Rule.If property (as a result of its destruction in whole or in part, theft, seizure or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted
* * * * * *
"(3) Conversion into Money Where Disposition Occurred After 1950.Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in *666 paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:
"(A) Nonrecognition of Gain. If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. * * *"
The only issues before this Court are (1) whether the administration building constructed by plaintiffs is property "similar or related in service or use to the property so converted" so as to qualify for nonrecognition of that portion of the gain, and (2) if so, what is the proper computation of recognizable gain.
It apparently is the taxpayer's position that so long as the reinvestment facilitates the production of income through the operation of the cemetery, it is within the "nonrecognition of gain" provision. Taxpayer relies primarily on Steuart Brothers, Inc. v. Commissioner, 261 F.2d 580 (Fourth Circuit 1958); Gaynor News Company, Inc., v. Commissioner, 22 T.C. 1172 (1954); and Loco Realty Company v. Commissioner, 8 Cir., 306 F.2d 207 (1962), in support of its position that it is the "basic use" made by the taxpayer or the "general class" which determines whether the new property is similar or related in service or use to the converted property.
The statute is a relief statute entitled to a liberal construction. Loco Realty Company v. Commissioner, supra; Massillon-Cleveland-Akron Sign Co. v. Commissioner, 15 T.C. 79. However, the courts have not construed the statute so liberally as to bring the reinvestment in this case within the relief provision.
The test for determining applicability of the relief provided is a functional one. The functional test as developed by the Board of Tax Appeals and extended by the Tax Court required a comparison of the physical use or end-use of the converted and replacement properties in each case. See Cotton Concentration Co., 4 B.T.A. 121; Paul Haberland v. Commissioner, 25 B.T.A. 1370; Kimbell-Diamond Milling Co. v. Commissioner, 10 T.C. 7; Gaynor News Company v. Commissioner, 22 T.C. 1172. The Third Circuit in McCaffrey v. Commissioner, 275 F.2d 27, adopted the end-use test in determining whether or not a reinvestment in investment property, a warehouse, was similar or related in service or use to the converted investment property, a parking lot. The Second and Fourth Circuits also apply the functional test but differ from the McCaffrey case and the Tax Court cases where the taxpayer is an investor but not the ultimate user of the property. In that situation, those Circuits, as demonstrated in Steuart Bros., supra, and Liant Record, Inc. v. Commissioner, (2 Cir., 1962) 303 F.2d 326, consider the service or use to the taxpayer rather than the end-use to the tenant or ultimate user. The Steuart case held that where the new property was held for investment purposes exactly as the condemned property and it was of the same general class, the function test was satisfied. The test set out in the Liant case, i. e. a comparison of the services or uses of the original and replacement properties to the taxpayer owner, is adopted by the Seventh Circuit in Pohn v. Commissioner, 309 F.2d 427. In the latter two cases, use of the old and new properties as an investment for production of rental income to the owner, is the function which is determinative.
Loco Realty Company v. Commissioner, supra, decided August 1, 1962, expresses *667 the view of the Eighth Circuit Court of Appeals. The Court in that case summarized, analyzed and clarified the prior case law interpreting Section 1033(a) (3) (A). The converted property in Loco realty had been owned and leased by the taxpayer to a tenant using the building for light manufacturing, whereas the replacement property was leased as an office and warehouse for a wholesale grocery business. The Court there found the properties similar or related in service or use, loc. cit. p. 215 of 306 F.2d, stating:
"We feel that something more than mere investment character is required, for the statute by its terms was clearly intended to have some limitation of application and could not have been designed to free the taxpayer-investor from tax on gain realized upon every conceivable involuntary disposition and replacement of investment property. * * *
"We think, then, that it is proper to require an aspect of similarity beyond mere investment character. We find attraction in Steuart's and Filippini's "same general class" approach and particularly in Liant's comparison of the services or uses which the properties have to the taxpayer-owner. We say only that, for the benefit of the statute to be available to the taxpayer-lessor, the respective lessees' end uses are not determinative and that it is sufficient if, coupled with the leasehold characteristic of the taxpayer's properties, there is also a reasonable similarity in the leased premises themselves. This approach gives effect to the statute's relating the properties concerned, as distinguished from their employment by the ultimate user, to the requirement that they be `similar or related in service or use'."
In the instant case the uses to the taxpayer to be compared are the income-deriving sales of burial privileges in the land (and perpetual care) and the accommodation of records and administrative procedures of the business. Except insofar as they relate to the same profit seeking venture, there is no similarity in use or service. The new property is occupied by the taxpayer, whereas the converted property is, in effect, leased to the purchaser of the burial privileges. In addition to the dissimilarity in purpose and use, the nature or character of the properties are different.
Furthermore, it is imperative that the reinvestment serve the purpose of effecting a replacement of the converted property. While evidence of difficulty or impossibility of duplication or substitution of the function of the old property may justify a more liberal application of the relief statute, difficulty or impossibility of replacement will not entitle a taxpayer to relief based on reinvestment which does not effect a replacement. International Boiler Works Company v. Commissioner, 3 B.T.A. 283. The reinvestment of the proceeds of the sale under threat of condemnation in the instant case in a new administration building does not comply with the purport of the statute. The effect of investing in an administration building is to replace the old building and to enhance the remaining property of the corporation. It is not a replacement of its income producing asset, the burial land sold to the State.
The foregoing will be adopted as the Findings of Fact and Conclusions of Law and judgment dismissing plaintiff's complaint will be entered accordingly.