FRED MALOOF, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4615-72.     Filed November 10, 1975.

---

*Richard Z. Steinhaus* and *Stephen Hochhauser,* for the petitioner.

*Michael A. Menillo,* for the respondent.

266

OPINION

Section 1333(3) provides that any amount which it requires to be treated as gain from an involuntary conversion "shall be recognized or not recognized as provided in section 1033." Under the latter section, where a taxpayer realizes a gain on the

involuntary conversion of property used in his own trade or business, it is clear that the reinvestment must be made in substantially similar business property. *Ellis D. Wheeler,* 58 T.C. 459, 463 (1972). Stated differently, the statute requires a "reasonably similar continuation of the petitioner's prior commitment of capital and not a departure from it." *Harvey J. Johnson,* 43 T.C. 736, 741 (1965). While it is not necessary to acquire property which duplicates exactly that which was converted *(Loco Realty Co. v. Commissioner,* 306 F.2d 207 (8th Cir. 1962), revg. 35 T.C. 1059 (1961)), the fortuitous circumstance of involuntary conversion does not permit a taxpayer to change the character of his investment without tax consequences (see *Liant Record, Inc. v. Commissioner,* 303 F. 2d 326 (2d Cir. 1962), revg. 36 T.C. 224 (1961)).[6]

The main point of contention between the parties is whether the conversion proceeds were reinvested in property "similar or related in service or use" to the converted property, a condition precedent to nonrecognition under section 1033(a)(2). Both parties agree that the appropriate test is one of "functional use." Petitioner argues that this test is satisfied without reference to the nature of particular assets, if the general character of the new business is substantially the same as that of the old. Respondent asks us to apply the test to the particular assets and to rule that because the 1966 award was received entirely with respect to merchandise, only that portion of the gain which was reinvested in inventory items is entitled to nonrecognition.

Where a taxpayer suffers a loss of business assets and uses the replacement property to continue or reenter the same business, opinion is divided as to whether different classes of assets must be considered separately or together for the application of section 1033. Compare *The International Boiler Works Co.,* 3 B.T.A. 283 (1926), Rev. Rul. 70-465, 1970-2 C.B. 162, and Rev. Rul. 70-501, 1970-2 C.B. 163, with *O. N. Bymaster,* 20 T.C. 649 (1953), *Massillon-Cleveland-Akron Sign Co.,* 15 T.C. 79 (1950), and Rev. Rul. 73-225, 1973-1 C.B. 32. Petitioner and respondent seek to utilize the authorities in this area to support their positions herein. We think they are both in error. Neither an

---

[6] The two cited cases involved a type of situation not involved in this case; in any event, the basis of the reversals was accepted by this Court in *Harvey J. Johnson,* 43 T.C. 736, 741 (1965). Since the involuntary conversion occurred prior to Jan. 1, 1951, tracing of the funds is necessary (see sec. 1.1033(a)-3(c), Income Tax Regs.), a requirement not demanded under the current statutory provision (see sec. 1.1033(c)-1, Income Tax Regs.).

aggregate nor an atomistic approach is adequate to determine in every case whether converted property has been replaced with other property which is similar or related in service or use. Section 1033 provides a means by which a taxpayer whose enjoyment of his property is interrupted without his consent may arrange to have that interruption ignored for tax purposes, by returning as closely as possible to his original position. Cf. *Gaynor News Co.,* 22 T.C. 1172 (1954). Granted that it is a relief provision entitled to liberal and realistic construction, still the taxpayer may claim its protection only if he does not "materially alter his type of business." *S. E. Ponticos, Inc.,* 40 T.C. 60, 64 (1963), revd. 338 F. 2d 477 (6th Cir. 1964).[7] Thus, for example, as in *Massillon-Cleveland-Akron Sign Co., supra,* some rearrangement of his investment among depreciable real and personal property may be tolerated where the overall effect is to reproduce the converted facility as closely as changed conditions permit. See also Rev. Rul. 73-225, *supra.*

But, there are limits to the extent of the change which can be countenanced and we think petitioner has exceeded those limits. His old business consisted primarily of the acquisition of raw materials, design, and marketing of finished products. Over 99 percent of his investment was in inventory and accounts receivable. The business which he established in 1969, by contrast, included an entire manufacturing plant. Well over half of his investment went into fixed assets such as real and depreciable personal property. This disproportionate shift from current to fixed assets reflects a fundamental change in the nature of the business itself. The acquisition of a manufacturing operation cannot be equated with the reestablishment of petitioner's former enterprise; a substantial change from inventory to depreciable assets, such as is the case herein, cannot be regarded as satisfying the "similar or related in service or use" requirement of section 1033. Cf. *United Development Co. v. United States,* 212 F. Supp. 664 (E.D. Mo. 1962), where the benefits of section 1033 were held unavailable to a taxpayer who used the proceeds of condemnation of cemetery lots to construct an administration building to house the offices from which the cemetery was operated.

---

[7] The basis of this reversal was also accepted by this Court in *Harvey J. Johnson, supra* n. 6.

Our view that, in a situation such as the one before us, section 1033 requires a reasonable degree of continuity in the nature of the assets as well as in the general character of the business is confirmed by the legislative history of section 1033. Thus, when the involuntary conversion provision was first enacted as section 217 of the Revenue Act of 1921, the floor manager in the House spoke in terms of a situation where the taxpayer "immediately proceeds to invest the moneys received in *other similar property.*" (Emphasis added.) See 61 Cong. Rec. 5201 (1921). And when the provision was amended in 1951 (by which time it had become section 112(f) of the Internal Revenue Code of 1939), the then chairman of the House Ways and Means Committee observed on the House floor (see 97 Cong. Rec. 10348 (1951)):

> Although proposals were received for broadening still further the relief granted by the bill, it was the unanimous decision of the Committee on Ways and Means that the relief should be granted within the basic framework of existing law requiring that the replacement property be similar or related in service or use to the property converted. *To permit the taxpayer to defer gain while changing the nature of his investment would be a serious departure from the policy of existing law which the Committee on Ways and Means believes should not be allowed.* [Emphasis added.]

Again, when the provision (by this time, sec. 1033 of the Internal Revenue Code of 1954) was amended in 1958, the committee reports referred to the "purchase [of] other *property similar in nature to the property converted.*" (Emphasis added.) See H. Rept. No. 775, 85th Cong., 1st Sess. (1957), 1958-3 C.B. 811, 838; S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 922, 992. At that time, Congress also added subsection (g) to section 1033 in order to incorporate the more liberal "like kind" test of section 1031 but, in doing so, carefully limited its liberalization to real estate investments. See S. Rept. No. 1983, *supra,* 1958-3 C.B. at 994; Conf. Rept. No. 2632, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 1188, 1219.

Petitioner did not replace an old manufacturing plant with one of modern design; rather, he replaced a business involving subcontracting most of the necessary labor over which he apparently exercised little control with one which has an integrated and mechanized operation of his own. Petitioner asks us to take judicial notice of advancing technology which rendered his former mode of operation impracticable. But, even if we were

to accede to his request, it would be of no avail. The test of section 1033 would still not be satisfied, since difficulty of compliance does not make the requirements of the statute inapplicable to petitioner. *Fullilove v. United States,* 71 F. 2d 852 (5th Cir. 1934); *United Development Co. v. United States, supra.*

Petitioner argues in the alternative that, in any event, no gain was realized in 1966 because his cost basis in the seized inventory items exceeded the amount of the award which he received. Respondent correctly states that petitioner has stipulated to the cost of the inventory included in his old business and to the recovery of a portion thereof in 1945 and that he may not now argue for a higher cost.

We hold that, except for purchases of inventory, petitioner did not replace his converted property with other property similar or related in use within the meaning of section 1033. Within this holding, however, we are left with one loose end. Respondent concedes that nonrecognition is proper with respect to $14,939.33 invested in inventory of Frederick Trading Co. by April 30, 1969. Petitioner is entitled to the same treatment of amounts expended from the replacement fund for the acquisition of inventory from May 1 to June 30, 1969, as well as amounts so expended for "similar or related" items in 1968.[8] In this latter connection, it is also possible that the operations of Fortuna Co. in 1968 involved some qualifying reinvestment in inventory. As to these elements, the record is incomplete.[9] We anticipate that the parties will be able to reach agreement under the Rule 155 computation, but, if they do not, we will, in accordance with our undertaking at the trial, reopen the record in order to take further evidence.

*Decision will be entered under Rule 155.*

---

[8] See *Paul Haberland,* 25 B.T.A. 1370 (1932).

[9] We do not consider petitioner necessarily bound by the manner of treatment he accorded these elements on his tax returns.