**L & F INTERNATIONAL SALES COR-PORATION, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 88–6730.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 1990.

Decided Aug. 28, 1990.

John E. Breckenridge, Stradling, Yocca, Carlson & Rauth, Newport Beach, Cal., for plaintiff-appellant.

David English Carmack, Dept. of Justice, Tax Div., Washington, D.C. for defendant-appellee.

Before NELSON, NORRIS and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In this federal income tax case involving eligibility for preferable treatment to a domestic international sales corporation, the question presented is whether an intercorporate payment should have been made within sixty days (as prescribed by the Secretary of the Treasury) or within two and one-half months (as contended by the taxpayer).

I

A

Before we turn to the facts in this appeal from judgment dismissing a complaint seeking a refund of federal income tax, it is appropriate for us to set forth the relevant statutory and policy background. Deficits in the United States' balance of trade with foreign countries moved Congress to enact a tax incentive to place American companies engaging in international trade through a domestic subsidiary on a more nearly equal footing with companies that sell their products abroad through foreign subsidiaries. To increase exports, Congress included in the Revenue Act of 1971, Pub.L. No. 92–178, 85 Stat. 497, new sec-

---

tions 991 through 997 of the Internal Revenue Code, which created favorable tax status for an entity known as a domestic international sales corporation ("DISC"). A corporation qualifying as a DISC is not subject to current taxation; rather, roughly one-half of its income is deemed to have been distributed to shareholders and is taxed to them currently, and the other half is tax-deferred.[1] As has been noted, however, the DISC provisions "quickly reach and rarely leave, a plateau of statutory intricacy seldom rivaled in other sections of the Code." B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 17.14, at 17–43 (4th ed. 1979).

To qualify for DISC treatment, a corporation must file a statement of election to be treated as a DISC and must meet certain income and assets requirements. One of these requirements is that at least ninety-five percent of a DISC's assets must be "qualified export assets." *See* 26 U.S.C. § 992(a)(1) (1988). This requirement is designed to ensure that only those earnings which are reinvested in the exporting business are given the deferred treatment. *See LeCroy Research Sys. Corp. v. Commissioner,* 751 F.2d 123, 124 (2d Cir.1984).

The question of what constitutes a "qualified export asset" is not always easy to resolve. On the one hand, section 993(d) of the Internal Revenue Code allows a DISC to lend its tax-deferred profits to affiliated producers of export goods. These so-called "producer's loans" and any interest thereon maintain their status as "qualified export assets." *See* 26 U.S.C. § 993(b), (d) (1988); Treas.Reg. § 1.993–1(g) (as amended in 1982). On the other hand, section 993(b) of the Code, which defines the term "qualified export assets" and includes "accounts receivable" within its definition, *see* 26 U.S.C. § 993(b)(3) (1988), does not always provide a ready answer.

The regulations issued under section 993 treat accounts receivable in greater detail. Treasury Regulation § 1.993–2(a)(3) uses the term "trade receivables" to describe the type of receivable which is included in the term "qualified export assets." The regulations provide that commissions receivable are treated as trade receivables, and hence as qualified export assets, in certain circumstances. Specifically, Treasury Regulation § 1.993–2(d) provides in part as follows:

(2) *Trade receivables representing commissions.* If a DISC acts as commission agent for a principal in a transaction ... which results in qualified export receipts for the DISC, and if an account receivable or evidence of indebtedness held by the DISC and representing the commission payable to the DISC as a result of the transaction arises [and if the principal is a related supplier with respect to the DISC] ..., such account receivable or evidence of indebtedness will not be treated as a trade receivable unless it is payable and paid in a time and manner which satisfy the requirements of § 1.994–1(e)(3) or (5)....

Treas.Reg. § 1.993–2(d)(2) (as amended in 1984). Treasury Regulation § 1.994–1(e) for its part provides:

(3) *Initial payment of transfer price or commission.* (i) The amount of a transfer price (or reasonable estimate thereof) actually charged by a related supplier to a DISC, or a sales commission (or reasonable estimate thereof) actually charged by a DISC to a related supplier ... *must be paid no later than 60 days following the close of the taxable year of the DISC during which the transaction occurred.*
....

(iv)(a) Except with respect to incomplete transactions ..., if the amount actually paid results in the DISC realizing at least 50 percent of the DISC's taxable income from the transaction as reported in its tax return for the taxable year the transaction is completed, then the amount actually paid shall be deemed to be a reasonable estimate of such transfer price or commission.

---

1. *See* S.Rep. No. 437, 92d Cong., 1st Sess. 90, *reprinted in* 1971 U.S.Code Cong. & Admin. News 1825, 1918, 2007. *See generally* B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 17.14 (4th ed.1979).

Treas.Reg. § 1.994–1(e)(3) (as amended in 1984) (emphasis added).

In short, taken together, sections 1.993–2(d)(2) and 1.994–1(e)(3) of the Treasury Regulations provide that if commissions receivable by a DISC for certain transactions are not paid to it within sixty days of the close of the DISC's taxable year, they are not "qualified export assets." Such unpaid commissions therefore will count against a DISC's fulfilling the requirement that ninety-five percent of its assets be "qualified export assets."

The failure to fulfill this percentage requirement results in an entity's disqualification as a DISC for the taxable year in which such failure occurs. In such an event, the accumulated DISC income deferred from taxation is recaptured over a defined period of time. The regulation for payment of commissions receivable within a certain time limit serves to ensure that loans from a DISC to a producer are used for export-related activities. *See LeCroy Research*, 751 F.2d at 125. (An unpaid commission, of course, is effectively a loan.) An open-ended payment period, on the other hand, would effectively allow unpaid commissions to become long-term loans not subject to the limitations of the producer's loan provisions.

## B

Having set forth the statutory and policy background in this complex area, we can summarize the relatively simple facts. Taxpayer, L & F International Sales Corp. ("Taxpayer" or "L & F Sales"), is a wholly-owned subsidiary of L & F Industries. The parent is a California corporation engaged in the business of designing and manufacturing large machines and their component parts, including custom-built machinery. L & F Sales, also a California corporation, was organized on June 1, 1973 for the purpose of engaging in international trade as a DISC.

On June 5, 1973, L & F Sales made a valid and effective election under section 992(b)(1) of the Internal Revenue Code to be treated as a DISC. This election was still in effect during the taxable year ending May 31, 1979 (the taxable year at issue in this case). Taxpayer also entered into a written agency agreement, effective as of June 1, 1973, with its parent, L & F Industries, under which L & F Sales was entitled to receive a commission on the sale abroad of products manufactured by the parent. On August 4, 1979, the sixty-fifth day following the close of the taxable year ending May 31, 1979, L & F Industries paid L & F Sales the maximum commission allowable under a set formula.

If the payment had been made five days earlier, this dispute might never have arisen. After an audit of L & F's 1979 federal corporation income tax return, the Commissioner of Internal Revenue asserted a deficiency in the amount of $130,075.55 against L & F Sales for the taxable year ending May 31, 1979. In his notice of deficiency, the Commissioner determined that L & F Sales did not qualify as a DISC in 1979 because L & F Industries had not paid at least a reasonable estimate of the amount of the commissions due within sixty days after the end of Taxpayer's fiscal year on May 31, 1979. The Commissioner therefore determined that the unpaid commissions were not qualified export assets under section 1.993–2(d)(2) or (3) of the Treasury Regulations. As a result of this determination, less than ninety-five percent of Taxpayer's assets consisted of qualified export assets, and L & F Sales was disqualified as a DISC for the taxable year ending May 31, 1979.

L & F Sales paid the asserted deficiency and, after taking certain other steps, brought this suit against the United States for refund of taxes paid and interest. Taxpayer alleged that the sixty-day time limit on the payment of commissions by a related supplier to a DISC was arbitrary, unreasonable, and not in conformity with the Internal Revenue Code. The parties stipulated to the most of the relevant facts.

After a one-day trial, the district court ruled for the United States and dismissed Taxpayer's complaint. It held that L & F Sales had been properly disqualified as a DISC because of its failure to have been paid, within sixty days after the end of the

taxable year, the commissions due under the agency agreement.

L & F Sales timely appeals; we have jurisdiction under 28 U.S.C. § 1291.[2]

II

L & F Sales challenges the validity of Treasury Regulation § 1.994–1(e)(3) and, by implication, § 1.993–2(d)(2), which prescribe that commissions receivable by a DISC from a related supplier[3] must be paid to the DISC within sixty days after the close of its taxable year.

L & F Sales concedes that the Secretary of the Treasury has the authority to impose by regulation a reasonable time requirement for the payment of commissions to a DISC. It argues, however, that the decision to set the deadline at sixty days after the end of the taxable year was so unreasonable as not to be in harmony with the "statute's origin and purpose." *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982) (quotation omitted); *see supra* note 2. Taxpayer urges instead a requirement that the Secretary use what it calls the "two and one-half months rule."

Five circuits have rejected challenges to the Secretary's authority to set a deadline for payment of commissions receivable to a DISC in order for such commissions to constitute qualified export assets. *See Addison Int'l, Inc. v. Commissioner*, 887 F.2d 660, 665 n. 5 (6th Cir.1989); *Gehl Co. v. Commissioner*, 795 F.2d 1324, 1330 (7th Cir.1986); *Thomas Int'l Ltd. v. United States*, 773 F.2d 300, 305 (Fed.Cir.1985),

*cert. denied,* 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986); *CWT Farms, Inc. v. Commissioner,* 755 F.2d 790, 802 (11th Cir. 1985), *cert. denied,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); *LeCroy Research Sys. Corp. v. Commissioner,* 751 F.2d 123, 125 (2d Cir.1984). Appellant argues that these cases are distinguishable as rejecting challenges to the Secretary's authority to impose *any* time limit at all. Taxpayer's challenge in the instant case is to the *particular* (i.e., sixty days) time limit prescribed.

Without necessarily agreeing that L & F Sales is accurately characterizing these earlier cases, we note that the sole issue before us is whether the sixty-day time period, not the required act of paying, is invalid. According to L & F Sales, a two-and-one-half-months requirement would have been valid. The company argues that "[s]everal provisions of the [Internal Revenue] Code clearly reflect a consistent pattern of Congressional intent" that "the corporate transactions involving related parties" have deadlines "correspond[ing] with the due date for corporate income tax returns—two and one-half months following the close of the taxable year." Appellant's Opening Brief at 10. L & F Sales explains that the so-called "two and one-half months rule" arose because the computations necessary to determine the amount of required or permitted payments will most frequently be made by taxpayers and their accountants in connection with the preparation of tax returns for the year.[4]

As logical and practical as a "two and one-half months" rule would be, L & F

---

**2.** The parties agree that the question presented in this case is one of law and therefore reviewed *de novo,* but they disagree as to how we must determine the validity of the regulations at issue. We will follow the lead of the Seventh Circuit, which assumed without deciding that the Secretary of Treasury issued the challenged regulations only under his general authority to prescribe all needful rules and regulations. *See Gehl Co. v. Commissioner,* 795 F.2d 1324, 1329–30 (7th Cir.1986); *see also* 26 U.S.C. § 7805(a) (1988) (providing, subject to certain restrictions, that the Secretary of Treasury "shall prescribe all needful rules and regulations for the enforcement of" Title 26 of the United States Code). We will therefore apply a relatively less deferential standard of review than would be the case if we decided that the Secretary issued the regu-

lations at issue under a particular grant of authority other than section 7805. We must determine whether "[t]he challenged Regulation is [ ] a reasonable statutory interpretation" by deciding whether the regulation "harmonizes with the statute's origin and purpose." *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982) (quotation omitted).

**3.** L & F Sales does not dispute that its parent, L & F Industries, is a "related supplier."

**4.** L & F Sales cites many provisions which are, in its view, examples of a congressional practice—nay more, rule—of "associat[ing] post year-end deadlines with the due date of income

Sales' argument is unavailing. The Secretary of the Treasury has authority under section 7805(a) of the Internal Revenue Code to "prescribe all needful rules and regulations for the enforcement" of the Code. In the DISC regulation area the Secretary adopted a "sixty-day" rule which he finds to be in harmony with the statute's origin and purpose. L & F Sales would emphasize instead Congress's "beneficent" or "benign" purpose in passing the DISC legislation.

Regardless of any general legislative motivation, Congress vested wide discretion in the Secretary; it clearly could have enacted a specific rule itself. In enacting the producer's loan provisions of 26 U.S.C. § 993(d), or at least in enacting provisions which recognize that DISCs must be subject to certain controls with regard to their transactions with related persons, *see CWT Farms,* 755 F.2d at 796, 802, Congress left details to the Secretary. As the Eleventh Circuit has noted, the congressional purpose was to "assur[e] that the profits of the DISC were used exclusively for export production and were not syphoned off to benefit domestic production." *Id.* at 796; *accord id.* at 802. The sixty-day deadline adopted by the Secretary for such an accounting transaction certainly is in harmony with that purpose; the fact that a two-and-one-half-month deadline might also have been reasonable cannot alter that fact.[5]

AFFIRMED.

tax returns." Appellant's Opening Brief at 16; *see, e.g.,* 26 U.S.C. § 267(a) (1988) ("No deduction shall be allowed [in respect of expenses or interest involving certain related parties] ... [i]f within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses are not paid...."); *id.* § 563(a) ("In the determination of the dividends paid deduction for purposes of the accumulated earnings tax imposed by section 531, a dividend paid after the close of any taxable year and on or before the 15th day of the third month following the close of such taxable year shall be considered as paid during such taxable year."); *see also* H.R.Rep. No. 1860, 75th Cong., 3d Sess.

52 (1938) ("In order to permit a corporation a reasonable time after the close of the taxable year to rectify an underpayment of dividends for the taxable year, the bill provides in section 405(c) for a credit for dividends paid within 2½ months after the close of the taxable year.").

5. The regulations' reasonableness is also ensured by a safe-harbor provision whereby a DISC need only be paid a reasonable estimate of its commissions within the sixty-day time limit. *See* Treas.Reg. § 1.994–1(e)(3)(iv)(a) (as amended in 1984).