110 T.C. No. 33


UNITED STATES TAX COURT


KORAMBA FARMERS & GRAZIERS NO. 1, DEAN PHILLIPS, TAX MATTERS
PARTNER, ET AL.,[1] Petitioners v. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos.  3679-96, 3680-96,          Filed June 29, 1998.
             3681-96, 3682-96.


        Partnerships subject to U.S. income reporting
made soil and water conservation expenditures in
connection with their farming operations in New South Wales,
Australia, during the years in issue.  Under sec. 175,
I.R.C., R allowed the deduction of such expenditures made by
one of the partnerships during calendar year 1986, but
applying sec. 175(c)(3)(A), I.R.C., denied deductions by
both partnerships of such expenditures made after Dec.
31, 1986.  The Tax Reform Act of 1986, Pub. L. 99-514, sec.
401(a), 100 Stat. 2221, added sec. 175(c)(3)(A) to the

---

[1]Cases of the following petitioners are consolidated
herewith:  Koramba Farmers & Graziers No. 1, Dean Phillips, Tax
Matters Partner, docket No. 3680-96; Koramba Farmers & Graziers
No. 2, Dean Phillips, Tax Matters Partner, docket No. 3681-96;
and Koramba Farmers & Graziers No. 2, Dean Phillips, Tax Matters
Partner, docket No. 3682-96.

Internal Revenue Code effective for amounts paid or incurred after Dec. 31, 1986, in taxable years ending after that date.

Held: Sec. 175(c)(3)(A)(i) and (ii), I.R.C., limits the deduction of soil and water conservation expenditures to those that are consistent with a soil conservation plan approved by the Soil Conservation Service (SCS) of the Department of Agriculture or a soil conservation plan of a State agency, which agency is comparable to the SCS. The area where the land to which the plan relates must be located within the United States, and not in a foreign country.

John R. Wilson, Robert S. Rich, and Patrick A. Jackman, for petitioners.

Frederick J. Lockhart, Jr., for respondent.


OPINION

NIMS, Judge: Respondent issued a notice of final partnership administrative adjustment (FPAA) to each of the two subject partnerships, disallowing in each instance soil and water conservation expenditure deductions under section 175, as follows:

| Partnership | Taxable Year Ending | Amount of Deduction Disallowed |
|---|---|---|
| Koramba Farmers & Graziers No. 1 (Koramba No. 1) | June 30, 1987 | $806,633 |
| | June 30, 1988 | 519,004 |
| Koramba Farmers & Graziers No. 2 (Koramba No. 2) | June 30, 1988 | 1,011,360 |
| | June 30, 1989 | 2,683,415 |

All section references, unless otherwise specified, are to sections of the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

By order, these cases were consolidated for trial, briefing, and opinion. They were submitted fully stipulated.

The sole issue for our consideration is whether the Koramba partnerships' soil and water conservation expenditures (conservation expenditures) incurred after December 31, 1986, with respect to land located outside the United States can qualify for deductibility under section 175.

## Background

Koramba No. 1 was organized as a general partnership under the laws of Australia. At the time each of the Koramba No. 1 petitions was filed, the partnership had its principal place of business at Koramba, Boomi, New South Wales, Australia.

Koramba No. 2 was organized as a general partnership under the laws of Australia. At the time each of the Koramba No. 2 petitions was filed, the partnership had its principal place of business at Koramba, Boomi, New South Wales, Australia.

At all relevant times, Dean Phillips (Phillips) has been the tax matters partner of Koramba No. 1 and Koramba No. 2 (partnerships). Phillips' address at the time the petitions were

filed was No. 326, 4132 S. Rainbow Boulevard, Las Vegas, Nevada 89013.

Prior to 1985, William Michael Owen and Penelope Ann Owen (the Owens) of New South Wales, Australia, were the owners of a farm, named Koramba, located in New South Wales. The Koramba farmland was used for grazing sheep and cattle and for farming dry-land wheat and sorghum. The Owens, who were looking for a financial partner to develop their farm, were introduced to Phillips, who was interested in acquiring additional rural properties in Australia. In 1985, Phillips and Heetco, Inc. (Heetco), a U.S. corporation in which Phillips is a shareholder, acquired a 50-percent interest in the Koramba farm from the Owens. Phillips, Heetco, and the Owens thereupon formed Koramba No. 1 to develop the farmland.

The Koramba farmland is located in a floodplain along the Macintyre and Barwon Rivers in northern New South Wales. The Koramba partners decided to use the nearby water resources to develop a portion of the farmland to grow cotton, which requires ample water supplies. In 1986, Koramba No. 1 started the construction of an irrigation system to raise cotton on the land. With the subsequent purchase of two adjacent farms in 1987 and 1988, the scale of the cotton farming operations was expanded, leading to the formation of Koramba No. 2, a second Australian general partnership, between Phillips and the Owens. By 1991,

the partnerships' irrigation system covered 11,000 acres of farmland.

By following sound soil and water conservation (conservation) practices in their cotton farming operations, the partnerships minimize the consumption of irrigation water. Pursuant to authorization from the New South Wales authorities, the partnerships pump water from the Macintyre and Barwon Rivers and store it in five reservoirs, together with excess water captured during flood season. From the reservoirs, the water is delivered to the cotton fields through a comprehensive system of irrigation pipes and channels. The partnerships' 44 cotton fields have been precisely leveled, using laser surveying technology, to permit proper water application and drainage. Run off water from the fields is recovered and returned to the reservoirs for future use. Using computer technology, the partnerships continuously measure soil moisture during the growing season, allowing precise determination of when and how much irrigation is needed.

In building their irrigation system, the partnerships complied with the standards and procedures for floodplain construction set forth by the New South Wales Government Department of Water Resources (the Department of Water Resources). The Department of Water Resources encourages and controls the implementation of sound conservation practices in

New South Wales, and exercises stringent controls over the placement of levees, banks, water channels, and reservoirs to ensure proper floodplain management. Pursuant to Part VIII of the New South Wales Water Act (the Water Act), the partnerships' conservation expenditures received general approval from the Department of Water Resources as being consistent with the conservation guidelines and plan for the area. Thus, the conservation expenditures incurred by the partnerships were consistent and in accordance with a conservation plan approved by the Department of Water Resources for the floodplain in which the land was located.

In connection with the filing of Forms 1065, U.S. Partnership Return of Income, the partnerships elected to deduct conservation expenditures under section 175. Respondent accepted the deductibility of the conservation expenditures incurred through December 31, 1986, but has disallowed the deductibility of subsequent conservation expenditures. In so doing, respondent has taken the position that section 175, as modified by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 401(a), 100 Stat. 2221, which added section 175(c)(3), no longer applies to conservation expenditures incurred with respect to land located outside the United States. Respondent concedes that, but for the application of section 175(c)(3)(A), all of the partnerships' conservation expenditures would qualify for section 175 treatment.

## Discussion

The relevant provisions of section 175 are as follows:

SEC. 175.  SOIL AND WATER CONSERVATION EXPENDITURES.

(a)  In general.--A taxpayer engaged in the business of farming may treat expenditures which are paid or incurred by him during the taxable year for the purpose of soil or water conservation in respect of land used in farming, or for the prevention of erosion of land used in farming, as expenses which are not chargeable to capital account.  The expenditures so treated shall be allowed as a deduction.

*    *    *    *    *    *    *

(c)  Definitions.--For purposes of subsection(a)--

*    *    *    *    *    *    *

(3)  Additional limitations.--

(A)  Expenditures must be consistent with soil conservation plan. --Notwithstanding any other provision of this section, subsection (a) shall not apply to any expenditures unless such expenditures are consistent with--

(i)  the plan (if any) approved by the Soil Conservation Service of the Department of Agriculture for the area in which the land is located, or

(ii)  if there is no plan described in clause (i), any soil conservation plan of a comparable State agency.

Until 1954, the resolution of the question of the treatment for tax purposes of the expenditures made by farmers to improve their land required a highly fact-intensive inquiry.  Compare, e.g., Collingwood v. Commissioner, 20 T.C. 937 (1953)

(terracing), with <u>Beltzer v. United States</u>, 4 AFTR 2d 5595, 59-2 USTC par. 9701 (D. Neb. 1959) (land leveling).

In 1954, Congress added section 175 to the Code, which was intended to provide statutory rules under which taxpayers engaged in the business of farming could "deduct certain expenditures for the purpose of soil or water conservation in respect of land used in farming or for the prevention of erosion of land used in farming." S. Rept. 1622, to accompany H.R. 8300, 83d Cong., 2d Sess., 216. Until 1986, section 175 remained substantially unchanged from its original enactment in 1954, with the exception of several amendments not relevant here. Before 1986, neither section 175, itself, nor its legislative history, nor the related regulations, specified the locale in which the improved farmland had to be situated.

In 1991, the IRS issued Tech. Adv. Mem. 91-19-005 (Jan. 18, 1991) (TAM), in the first part of which the IRS concluded that the partnerships' pre-1987 conservation expenditures could qualify under section 175 even if paid or incurred with respect to foreign land. As a consequence, respondent has not challenged Koramba No. 1's conservation expenditures paid or incurred in calendar 1986.

Unfortunately from the partnerships' perspective, however, the IRS in the TAM also took the position (which is respondent's position here) that, even if a proper section 175 election had

been made by the partnerships, postcalendar 1986 conservation expenditures in a foreign country, in this instance Australia, do not qualify under section 175 by reason of section 175(c)(3)(A).

As stated previously, section 175(c)(3)(A) was added by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 401(a), 100 Stat. 2221, effective for amounts paid or incurred after December 31, 1986, in taxable years ending after that date. Consequently, since the June 30, 1987, taxable year of Koramba No. 1 ended after December 31, 1986, only the last 6 months of its conservation expenses for that year are subject to section 175(c)(3)(A).

With the enactment of section 175(c)(3)(A), section 175 is for the first time arguably site-specific (the partnerships challenge site-specificity as to section 175(c)(3)(A)(ii)). The Congressional objective in enacting the 1986 amendment is cogently articulated in the Senate report:

> The committee is concerned that certain Federal income tax provisions may be affecting prudent farming decisions adversely under present law. In particular, the committee is concerned that such provisions may have contributed to an increase in acreage under production, which in turn may have encouraged the present-day overproduction of agricultural commodities. * * * [S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 265.]

Thus, the focus of the amendment is to discourage overproduction of agricultural commodities by keying the

availability of conservation expenditure deductions to amounts incurred that are consistent with a conservation plan approved by the Soil Conservation Service (SCS) of the Department of Agriculture, and if there is no SCS conservation plan for the area in which the property is located, amounts incurred for improvements that are consistent with a plan of a State conservation agency.  S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 265.

Respondent argues that the consequence of the form in which Congress chose to cast section 175(c)(3)(A) requires the disallowance of deductions for conservation expenditures outside the United States.  The partnerships, of course, dispute this.

The partnerships agree with respondent that their conservation expenditures obviously cannot qualify under section 175(c)(3)(A)(i) because in that provision it is expressly provided that the conservation expenditures must be consistent with an SCS-approved plan for the area in which the land is located.  The Department of Agriculture through the SCS would be unlikely, to say the least, to deal with land located outside the United States.  The partnerships argue that their conservation expenditures can, however, qualify under section 175(c)(3)(A)(ii).

They first maintain that the term "State", as used in clause (ii), should be read expansively so as to embrace governmental

entities over and beyond the 50 States constituting the United States plus the District of Columbia.  We need not tarry long over this first argument.  The partnerships argue, among other things, that including foreign agencies is consistent with the use of the term "State" in the international context.  We quote from the partnerships' opening brief:

> Including foreign agencies in the definition of "comparable State agency" is also consistent with the general usage of the term "State" in the international tax context.  Although "State" naturally is often limited to the U.S. states when used domestically, it more typically is used internationally to refer to national governments.  For example, in the U.S./Australia income tax treaty, the term is defined as follows:
>
> The term "State" means any National State, whether or not one of the Contracting States.
>
> Convention Between the Government of the United States of America and the Government of Australia for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Article 3(1)(h), reprinted in 1986-2 C.B. 220.

Following this quotation, the partnerships simply state that, based on the treaty definition, a broader reading of the term "State" is more appropriate "in this context".

We think it indisputable that the term "State", as it appears in section 175(c)(3)(A)(ii), denotes one of the States and the District of Columbia which, taken as a whole, constitute

the United States, as defined in sections 7701(a)(9) and (10).

Those sections provide:

> (9) United States.--The term "United States" when used in a geographical sense includes only the States and the District of Columbia.

> (10) State.--The term "State" shall be construed to include the District of Columbia, where such construction is necessary to carry out provisions of this title.

The language of the Senate report states that "amounts incurred for improvements that are consistent with a plan of a State conservation agency are deemed to satisfy the Federal standards." S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 265 (emphasis added). There isn't the slightest hint in the legislative history or the statute itself that Congress had anything else in mind when section 175(c)(3)(A) was enacted.

Somewhat more plausibly, but nevertheless unconvincingly, the partnerships urge that, even if a "comparable State agency" excludes foreign agencies, section 175(c)(3)(A)(ii) still may be construed so as to permit the partnerships to deduct their conservation expenditures for the years in issue. In this connection, the partnerships contend that their conservation expenditures need only be consistent with the plan of some State agency to be deductible. Insofar as the New South Wales plan applicable to the area where the Koramba farmland is located may be equivalent to the plan of an agency of any one of the States of the United States or the District of Columbia, the

partnerships argue that they have satisfied the requirements of section 175(c)(3)(A)(ii).

We disagree.  For section 175(a) to apply, we believe the statute requires that the improved land must lie within the State whose agency is comparable to the SCS, and, as discussed above, that the "State" referred to by the statute means one of the States and the District of Columbia which together compose the United States.  The structure of section 175(c)(3)(A), which expressly refers in clause (i) to "the area in which the land is located", by obvious implication engrafts the quoted words from clause (i) onto the end of clause (ii).  Statutes "are to be considered, each in its entirety and not as if each of its provisions was independent and unaffected by the others." Alexander v. Cosden Pipe Line Co., 290 U.S. 484, 496 (1934); accord Union Carbide Corp. & Subs. v. Commissioner, 110 T.C. ___, ___ (1998).  It defies logic to suggest that Congress intended to approve the deduction of conservation expenditures in Nevada, for example, which are consistent with a conservation plan of an agency of some other State.  The partnerships acknowledge as much on brief in the domestic context, and we see no reason why the site-specific requirement should be waived so as to permit deductions for improved land located in a foreign country, in this case Australia.

The conference committee report dispels any doubt which may remain as to the correctness of our analysis. There it is stated that

> the conferees wish to clarify that while prior approval of the taxpayer's particular project by the Soil Conservation Service or <u>comparable State agency</u> is not necessary to qualify the expenditure under this provision, <u>there must be an overall plan for the taxpayer's area</u> that has been approved by <u>such an agency</u> in effect at any time during the taxable year. [H. Conf. Rept. 99-841, 1986-3 C.B. (Vol. 4) 110; emphasis added.]

The phrase "such an agency" unmistakably refers to the SCS or a State agency comparable to the SCS, whose plan is in effect for the taxpayer's area.

To the extent the partnerships make other arguments regarding the meaning of "State" and "comparable State agency" as used in the instant statute, we find the arguments wholly unconvincing and unnecessary to discuss.

The partnerships are understandably aggrieved that, while subject to U.S. income tax reporting, they are nevertheless denied conservation deductions to which a similarly situated owner of farmland located in the United States would be entitled. We are convinced, nevertheless, that in order to discourage overproduction of agricultural commodities as a result of previously existing Federal income tax provisions, Congress found it necessary to limit allowable conservation deductions to those

incurred with respect to land located within an area in the United States that are consistent with statutorily specified conservation plans for that area.  The unfortunate consequence of this restricting enactment, from the partnerships' point of view, is that as of 1987 conservation expenditure deductions related to foreign farmland are no longer allowed by reason of section 175(c)(3)(A).  The partnerships' conservation expenditure deductions must therefore be disallowed.

To reflect the foregoing,

<u>Decisions will be</u>

<u>entered for respondent</u>.